UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-02261-WYD

VICKIE R. STANBERRY,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability and disability insurance benefits.  For the reasons stated below, this case is reversed and remanded for an immediate award of benefits.

I.    <u>BACKGROUND</u>

Plaintiff was born in September 1957, and was 51 years old on the date of the hearing before the administrative law judge ["ALJ"].  (Transcript ["Tr."] 106, 13.)  She completed the ninth grade.  (*Id*. 152.)  Plaintiff applied for a period of disability and disability insurance benefits in January 2007, alleging disability beginning on June, 2007.  (*Id*. 106-20).  She alleged that she been unable to work since June 2001 due to limitations caused by physical impairments and post traumatic syndrome disorder ["PTSD"], schizoaffective disorder, psychotic disorder, and alcohol and amphetamine abuse.  (*Id*. 146).  After her applications were denied initially, Plaintiff timely requested a

hearing which was held in March 2009.  (*Id.* 25-48.)  On April 30, 2008, the ALJ issued a decision finding that Plaintiff was not disabled.  (*Id.* 4-24.)

The ALJ found in his decision that Plaintiff was insured for Title II benefits through June 30, 2002, and that she had not engaged in substantial gainful activity since her amended onset date, January 8, 2007.  (Tr. 17.)  He noted that, by amending her onset date, Plaintiff had essentially withdrawn her Title II application.  (*Id.* 9.)  At step two, the ALJ found that Plaintiff had both physical and mental severe impairments.  (*Id.* 11.)  At step three, however, the ALJ found that her conditions did not meet or equal the requirements of any presumptively disabling listed impairment.  (*Id*, 11-12.)

The ALJ then turned to Plaintiff's RFC and ability to work.  He found that Plaintiff's "mental disorders, <u>in combination with her polysubstance abuse</u>, results in moderate limitations of daily activities, marked limitations in social functioning, marked difficulties maintaining concentration, persistence or pace, and one to two episodes of deterioration or decompensation based on her substance abuse."  (Tr. 12.)  He then found that, based on all of the impairments including the substance use disorder, Plaintiff did not have the RFC to sustain work on a regular and continuing basis and that there were no jobs in significant numbers that Plaintiff could perform.  (*Id.* 12-14.)

The ALJ then addressed Plaintiff's ability to work if she stopped the substance abuse.  He first found that the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities and that she would continue to have a severe impairment or impairments.  (Tr. 14.)  However, these impairments, individually or in combination, would not meet or medically equal any of the listed

impairments. (*Id.*) The ALJ then found that if Plaintiff stopped the substance abuse, she would be able to perform a range of light work and that there were a significant number of jobs that Plaintiff could do. (*Id.* 15-22.) He therefore concluded that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability and that Plaintiff was not disabled. (*Id.* at 22-23.)

The Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff claims that the ALJ's consideration of drug and alcohol abuse does not follow the law, and that the ALJ erred when he failed to consider Plaintiff's personality disorder. Accordingly, she argues that the ALJ erred in finding that Plaintiff's alcoholism was a contributing factor material to the determination of disability. Plaintiff also argues that the ALJ did not properly evaluate the conclusions of the mental health providers who treated Plaintiff and that he erred in weighing the other medical evidence regarding her mental impairments. Thus, she argues that the mental RFC is deficient.

The Commissioner maintains in response that Plaintiff is not disabled within the meaning of the Act, and that the ALJ's findings are supported by substantial evidence and free of reversible legal error. Accordingly, the Commissioner contends that the Court should affirm the final decision of the Commissioner.

II.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.      <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

            1.      <u>The ALJ's Consideration of Plaintiff's Drug and Alcohol Abuse</u>

The first issue I address is whether the ALJ's finding that Plaintiff's substance abuse was a contributing factor material to the disability is supported by substantial evidence. I note on that issue that the Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

"Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs

or alcohol." *Drapeau*, 255 F.3d at 1214 (citing 20 C.F.R. § 416.935(b)(1)). "[T]he ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of plaintiff's remaining limitations would be disabling." *Id.*

If the ALJ finds that the claimant would still be found disabled if she stopped abusing alcohol, "then the alcohol abuse is not a contributing factor material to the finding of disability." *Drapeau*, 255 F.3d at 1214-1215. "If, however, the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability." *Id.* at 1215.

Plaintiff first asserts on the drug and alcohol abuse issue that while the ALJ considered other mental health diagnoses, he erred because he did not address the diagnosis of personality disorder (and Listing 12.08 of the Listings of Impairment related to same). She argues that the failure to consider this disorder is of significance in light of the Tenth Circuit's decision in *Salazar v. Barnhart*, 468 U.S. 615 (2006). I agree.

In *Salazar*, the Tenth Circuit held that an ALJ erred in failing to consider a diagnosis of borderline personality disorder in his disability determination. *Id.*, 468 U.S. at 621-22. It stated that "[i]t is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." *Id.* "[T]he failure to consider all of the impairments is reversible error." *Id.* Here, the ALJ acknowledged that Dr. Benson diagnosed a personality disorder (after a thorough examination) (Tr. 550), but then failed to consider the disorder or the separate listing for this disorder in his decision.

This is despite the fact that this diagnosis was also made during Plaintiff's hospitalization at St. Anthony (*id.* 303) and by her mental health providers at the Stout Street Clinic. (*Id.* 513, 408). This is reversible error based on the above.

The Commissioner argues, however, that there is no evidence that Plaintiff's personality disorder caused her to be disabled and that it not relevant to the analysis of the case. I disagree. First, it not proper for the Commissioner to make arguments that were not part of the ALJ's analysis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985) ("neither the ALJ, nor the Appeals Council cited this [argument] as a reason for denying benefits to Knipe, and we therefore should not uphold the agency's denial of benefits on this basis) . The ALJ is charged in the first instance with determining the impact of impairments such as a personality disorder, both individually and in combination with Plaintiff's other impairments, on her claim of disability. Indeed, as noted by the Tenth Circuit, a personality disorder "may account for her abuse of drugs and alcohol". *Salazar*, 486 F.3d at 622. *Salazar* also noted that impulsiveness, as demonstrated by, for example, by substance abuse, is a key symptom in diagnosing a personality disorder. *Id.* Thus, the ALJ's failure to discuss this diagnosis or the impact of same on Plaintiff's claim requires a reversal and remand in and of itself.

Plaintiff also argues that the ALJ erred in not discussing or following the Commissioner's teletype that provided guidance on when an ALJ should find that drug and alcohol abuse is not a contributing factor material to the finding of disability. Turning to my analysis, shortly after the law was amended to provide that a claimant could not be disabled by substance abuse alone, the Social Security Administration sent

out a teletype on applying the law. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). "This teletype stated that '[w]hen it is not possible to separate the mental restrictions and limitations [imposed by substance abuse] and the various other mental disorders shown by the record, a finding of 'not material' would be appropriate." *Id.* "In other words, the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.*

The teletype also states that it will often be "very difficult to disentangle the restrictions and limitations imposed by the substance use disorder from those resulting from other mental impairment(s)," and that "[w]e know of no research data upon which to reliably predict the expected improvement in a coexisting mental impairment(s) should drug/alcohol use stop." *Salazar*, 468 F.3d at 623. Usually the only way to measure the mental impairments alone would be to look at periods of abstinence. *Id.*

In this case the ALJ stated, "[t]here is a substantial amount of medical evidence in the record that shows the claimant's severe mental impairments are at least partially related to her polysubstance abuse." (Tr. 17.) Among other things, the ALJ refers to the three hospitalizations "for acute psychosis related to substance abuse", citing Exhibits 4F, 7F and 8F. (*Id.*) He also stated that treatment records from the Stout Street Clinic show Plaintiff "has a history of non-compliance with treatment/medication and ongoing polysubstance abuse", but that when Plaintiff "does take her medications and ceases her drug/alcohol abuse, her symptoms decrease. (*Id.* at 18, citing to portions of Exhibits 9F and 14F.) On the issue of materiality, he acknowledged that

Plaintiff "has not had a substantial length of time in which she stopped abusing drugs and alcohol", but "noted that if she ceased her substance abuse, her level of functioning would increase significantly, as medical evidence shows the claimant's symptoms are mostly substance induced."  (*Id.* 22.)  He concluded on the issue:

> "There is little evidence to suggest that the claimant is not capable of understanding, remembering, and carrying out simple instructions when not abusing drugs and alcohol.  Thus, consistent with the record as a whole, it appears that claimant's substance addiction disorder is a contributing factor to the claimant's impairments and is considered material."

(*Id.*)

Plaintiff contends in response that the medical evidence does not show that her symptoms are mostly substance induced and that the ALJ did not properly apply the law on drug and alcohol abuse as clarified by the teletype.  Again I agree.  The issue is whether Plaintiff's remaining mental impairments are disabling when Plaintiff is not abusing drugs and alcohol.  The first inquiry is whether there is a medical or psychological report, opinion or projection as to Plaintiff's remaining limitations if she stopped using drugs or alcohol.  *Salazar*, 468 F.3d at 624.  The ALJ does not specifically point to any professional's opinion that backs up the conclusion that drug and alcohol abuse is a contributing factor material to disability and I have found none in the record.  Indeed, the professional opinions in the record suggest just the opposite.

Plaintiff's treating providers from the Stout Street Clinic specifically stated in numerous MED-9 forms for Plaintiff to qualify for aid to the needy and disabled benefits that Plaintiff was disabled from working for 6-12 months or more and that

alcohol/substance abuse was NOT Plaintiff's primary diagnosis. (Tr. 406–07, 410-11, 514-15, 523-26.) Further, they expressly stated that even without drugs, she is significantly impaired. (*Id.* 525, *see also* 428-"sober 8 months- still having severe problems.") Even consulting psychologist Dr. Benson stated that it was "[d]ifficult to determine the extent to which her problems such as psychosis are the result of long-term amphetamine use." (*Id.* 548-49.) While the ALJ rejected these opinions, I find in section II.B.2, *infra*, that the reasons given by the ALJ for this decision are not supported by substantial evidence. According to the teletype, then, the ALJ should have found that drug and alcohol abuse is not a contributing factor material to the determination of disability. *Id*.

The teletype also directs the ALJ to look at periods of abstinence. Here, the ALJ acknowledged that Plaintiff "has not had a substantial length of time in which she stopped abusing drugs and alcohol" but then went on to find that drug and alcohol abuse was a contributing factor material to the disability. Without periods of abstinence, however, the ALJ had no basis to make this conclusion. Further, while the ALJ believed that there were not significant periods of abstinence, the evidence is actually conflicting on this issue. While there are some references to Plaintiff occasionally using drugs or alcohol during her years of treatment at Stout Street Clinic, the vast majority of entries show a self reported denial of substance abuse and no suspicions on behalf of the healthcare professionals who were treating her that she was "high" on any substances during their treatment appointments. (Tr. 400-467, 510-531.) Further, the medical providers stated that Plaintiff remained abstinent for the majority of time during her

treatment and/or that her substance abuse problems were in remission. (*Id.* 407, 411, 426, 509, 524.)  Based on the foregoing, this appears to be a situation where the record is not clear as to the impact of the substance abuse on Plaintiff's mental impairments. Under that circumstance, the teletype again directs a finding that the drug and alcohol abuse is not material.

Finally, I find that the ALJ selectively applied the evidence in finding that Plaintiff's substance abuse was a contributing factor material to her disability.  The ALJ pointed to isolated medical records which he stated show that when Plaintiff was not abusing drugs or alcohol and when she takes her medications, her symptoms decrease and her impairments improve. (Tr. 18.)  He did so despite the treating providers' findings to the contrary discussed above.  Further, the ALJ ignored the fact that while the cited records make references to Plaintiff doing well on her medications, being stable, feeling better, etc., the records also continue to document impairments such as panic attacks, anxiety, depression, disorganization, paranoia, poor memory and follow-through, difficulty concentrating, mood instability, etc.  (*Id.* 401-403, 405, 407-11, 413, 419, 509, 515.)  The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter v. Chater*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).  Moreover, the records expressly state that Plaintiff still has significant symptoms while on medication and without the drug abuse.  (515-"[e]ven with. . .psych meds, Client is significantly impaired", 525-"even on meds and without drugs/ETOH, she is significantly impaired.")

I also find the case of *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) instructive on the issue of failure to comply with treatment. There, as here, an ALJ rejected a treating physician's opinion based on such failure. The Tenth Circuit found that this was "an improper basis to reject the treating physician's opinion" as, among things, the doctor's treatment notes did not indicate that he believed that claimant was sufficiently stable to return to work even when on medication. *Id.* at 1083. Further, it found that "[g]iven that Dr. Baca was consistently reporting that claimant was unable to work as a result of her mental illness, the references to claimant being "stable" may have simply meant that she was not suicidal." *Id.* The ALJ also erred in that case because he did not give the claimant or her physician an opportunity to explain the reasons for her failure to take medications. *Id.* The ALJ erred in the same manner in this case.

In conclusion, I find that the ALJ's conclusion that drug and alcohol abuse is a material factor contributing to Plaintiff's disability is not supported by substantial evidence. Accordingly, a reversal of the ALJ's decision is appropriate on this ground. As stated in *Salazar*, "[s]etting aside the fact that the ALJ erred by failing to consider all of [Plaintiff's] medically determinable impairments], there is no substantial evidence to support his conclusion that 'without the effects of drug and alcohol abuse, [she] would not be disabled' on the basis of [her mental impairments] alone." *Id.*, 468 F.3d at 624.

2.   The Weighing of the Medical Evidence

Plaintiff also argues that the ALJ erred in rejecting the conclusions of the two mental health professionals who treated her from 2001 to 2008 (Tr. 19-20), in favor of a

psychological examiner, Dr. Edward Johnson, who only saw Plaintiff one time (*id*. 468-470) and who the ALJ accorded "great weight" to.  (*Id*. 20).  The ALJ also gave "substantial weight" to the assessment of the state agency medical physician.  (*Id*.)  I find for the reasons below that the ALJ did not properly weigh the medical evidence and that his findings are not supported by substantial evidence.

The two mental health providers who treated Plaintiff are her treating psychiatrist Dr. Elizabeth Cookson and treating psychiatric nurse Mary Schuchman.  They treated Plaintiff for eight years from 2001 to 2008.  (Tr. 400-467, 510-31).  I first address the opinions/findings of treating psychiatrist Dr. Elizabeth Cookson.  (*Id*. 19-20.)  She completed a form setting forth Plaintiff's mental limitations which included specific medical findings and observations to reinforce her conclusions.  (*Id*. 507-509.)  She indicated no areas of extreme limitation but noted many areas of moderate and marked limitations."  (*Id*.)  The marked limitations are defined as "[s]erious limitations in this area.  There is a substantial loss in the ability to effectively function."  (*Id*.)  Plaintiff's areas of marked limitation include the ability to understand, remember and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule and maintain regular attendance; the ability to sustain ordinary routine without special supervision; and the ability to interact appropriately with the public and get along with coworkers.  (*Id*.)

Dr. Cookson also stated that Plaintiff "has repeatedly demonstrated poor follow through and problems following directions.  Takes repeated reminders and attempts to negotiate systems."  "Thought processes quickly become disorganized under stress."

"Interprets interpersonal difficulties in idiosyncratic and suspicious fashion, e.g. that she was placed under a spell by a witch." "Has difficulty describing her own symptoms. Focuses on how "nervous" she is." "Unable to maintain AND [aid to the needy and disabled] benefits consistently due to difficulties understanding paperwork, deadlines and requirements. Has also had interpersonal problems with technicians." (*Id.* 508-509.) Dr. Cookson's conclusion was that Plaintiff "would have great difficulty with a regular schedule (she has had great difficulty keeping appointments here) and would experience frequent interruptions due to her symptoms." (*Id.* 509.)

The ALJ acknowledged that if Dr. Cookson's opinions were given full weight, her opinion would mean that Plaintiff was unable to sustain work activity because of her mental impairments. (Tr. 19.) However, he found that "the assessment and opinions of Dr. Cookson are not well supported." (*Id.*) In contrast to Dr. Cookson's opinions, the ALJ concluded that there are only two mental limitations— that Plaintiff can understand, remember and carry out only simple instructions and tolerate no public interaction. (*Id.* 15, finding # 13). He also found as discussed previously that substance abuse is a contributing factor material to disability.

I first find that the ALJ did not properly weigh Dr. Cookson's opinion as a treating physician. An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.

1995) (quotation omitted). "A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994). The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled." *Id.*

In this case, while the ALJ acknowledged that a treating physician's opinions must be given controlling weight, he then rejected Dr. Cookson's opinions in their entirety. This was error. Even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004); SSR 96-2p, 1996 WL 374188, at *4 (1996). Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Langley*, 373 F.3d at 1120 (quotation omitted). These factors are set out in 20 C.F.R. § 404.1527(d). The ALJ did not engage in this weighing process.[1] The 'failure to apply the correct legal standard[s] or to provide th[e] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

I also find that the reasons the ALJ gave for rejecting Dr. Cookson's opinions are not proper and/or are not based on substantial evidence. First, the ALJ says that

---

[1] It seems that the only factor he discussed was the fact that Plaintiff had only seen Dr. Cookson a few times. That is not, however, a ground that allows an ALJ to completely reject a treating physician's opinions. *See Carpenter*, 537 F.3d at 1270 (finding that the ALJ erred in not giving a doctor's "opinion controlling weight, because it was 'a one time evaluation'", since the ALJ was "'still required to consider his opinion' in light of the other record evidence and the factors set out in the regulations. . . .") (quotation omitted).

Dr. Cookson's opinions are not consistent because she finds that Plaintiff's third hospitalization in September 2006 was unrelated to substance abuse when the discharge summary shows polysubstance dependence was part of the cause. In this hospitalization Plaintiff tested positive for benzodiazepine, not amphetamines and cocaine which were Plaintiff's drug of choice. (*Id.* 276-279.) The discharge summary for that admission actually diagnoses only a psychotic disorder with a "rule out" diagnosis of "schizoaffective disorder with polysubstance dependence versus substance induced psychosis with polysubstance dependence". (*Id.* 391.) At any rate, even if Dr. Cookson did not know of a possible substance issue associated with the hospitalization, that is not a reason to simply dismiss her opinions and medical findings formed over the course of years of treatment. (*See id.* 438, 509.)

The ALJ also questions Dr. Cookson's statement that Plaintiff would have difficulty keeping a regular schedule based on the fact that she has been able to make appointments at Denver Health Medical Center, get an apartment and travel to Arizona. However, an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996); *see also Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (a medical doctors's statements about Plaintiff's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence). Further, being able to set a doctor's appointment is very different from being able to maintain a work schedule day in and day out. The proper inquiry for the ALJ is whether the plaintiff is

capable of continued and sustained work.  *Washington*, 37 F.3d at 1442.  The ALJ did not consider that issue.

Finally, the ALJ discounts Dr. Cookson's opinions because she had not reviewed Dr. Benson's report that "indicates the claimant would benefit from working."  (Tr. 20.)  The ALJ's findings regarding Dr. Benson's conclusions are, however, very skewed.  First, Dr. Benson never says he believes Plaintiff can maintain work.  In fact, his conclusions were that with her many disabilities and deficits, it would be a "huge challenge" for her to do so.  (*Id.* 549.)  Certainly it can be said for any disability claimant that it would be in their best interests to work, the more important question, and the question the ALJ should have focused on, is whether the claimant can consistently work.  Dr. Benson's opinion on this issue suggests that she would not be able to do so.  (*Id.* 538-551.)  Thus, Dr. Benson's report actually compliments and supports the conclusions of Dr. Cookson, it does not contradict them.  The ALJ's reliance on Dr. Benson's opinion to support his decision is thus not well founded.

I also find other errors with the ALJ's assessment of Dr. Benson's opinions.  In addition to the findings cited above, Dr. Benson found that Plaintiff had a "borderline range of intellectual ability" (Tr. 547) as well as a number of "[s]erious vocational limitations".  (*Id.* 547, 550.)  The vocational limitations include frequently making rash or unwise decision, which have negative consequences in work settings, behavior that is typically in contradiction to obtaining and maintaining employment, and "[m]emory and concentration deficits" which interfere significantly with remembering job instructions or performing job tasks.  (*Id.* 550.)  Dr. Benson found that Plaintiff "will have difficulty

competing in traditional academic training" and "will have trouble receptively and expressively and is concrete in her thought processes" and that the "powerful combination of problems will make it difficult for her to successfully achieve her goals, whether they are vocational or not." (*Id.*)  He also found that Plaintiff will experience low employer acceptability and that "[h]er need to pursue not only traditional work but participation in the world in a broader sense will certainly be huge challenges for her." (*Id.* 549.)  He concluded that Plaintiff will "likely not be able to achieve her stated goal of maintaining a traditional vocational path."  (*Id.*)

The ALJ improperly did not state what weight he gave to Dr. Benson's opinions. It appears, however, that he completely ignored or rejected almost the entirety of the report documenting significant mental impairments that impact Plaintiff's ability to work in lieu of a few isolated sentences from Dr. Benson which he felt supported his opinion. This was error.  As previously noted, an ALJ may not use only portions of evidence in a report that he feels are favorable to his decision while ignoring the other evidence that may be unfavorable.  *Carpenter*, 537 F.3d at 1265.

Further, the ALJ failed to consider the fact that Dr. Benson was the only provider who did a thorough assessment and testing regarding Plaintiff's mental impairments. As such, it appears he may be in a better position to assess her mental functioning than other providers, particularly those who merely reviewed medical records or saw Plaintiff briefly.  The ALJ also failed to consider the diagnosis of borderline intellectual functioning.  This has an impact on the capacity to perform the full range of sedentary work and must be considered along with the claimant's other impairments to determine

how it impacts upon the claimant's RFC. *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997). Finally, Dr. Benson's opinions on Plaintiff's ability to work were not properly considered. "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination of disability, including opinions from medical sources about opinions reserved to the Commissioner." *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002).

I now turn to the opinions of treating nurse Schuchman. In her years of treatment of Plaintiff, she filled out numerous MED-9 forms for her to qualify for AND benefits. In those forms, she consistently indicated that substance abuse is not Plaintiff's primary diagnosis. (Tr. 514-515 (7/11/08), 523-524 (10/22/07), 406-407 (10/25/06), 410-411 (9/15/06).) On the form completed July 11, 2008, she wrote "polysubstance abuse-early partial remission… even with stable housing and psych meds, client is significantly impaired." (*Id*. 515). On September 26, 2007. she wrote "even on meds and without drugs/alcohol she is significantly impaired." (*Id*. 526). On September 2, 2005 she wrote "sober 8 months- still having severe problems." (*Id*. 428.)

While the ALJ states he gave Schuchman's opinions in the Med-9 forms "minimal weight" (Tr 19), it appears he actually gave them no weight. This should have been clear in his decision. Further, by addressing only the Med forms filled out by Schuchman, the ALJ appeared to ignore all the other medical findings expressed in her treatment records. This also was clear error. Finally, I find that the ALJ did not provide valid reasons to reject nurse Schuchman's opinions in the Med-9 forms.

The ALJ first indicates as a ground to reject Schuchman's opinions that she is not an "acceptable medical source". (Tr. 19). However, this does not provide him a basis to simply reject her opinions. Instead, he was required to conduct a proper evaluation of her opinions pursuant to SSR 06-03p, 2006 WL 2329939, at *5 (2006). That Social Security Ruling specifies how "other sources" who are not "acceptable medical sources" should be evaluated. It makes clear that an opinion from other sources such as nurses can in fact even outweigh opinions from "acceptable medical sources," in situations where, for example, they have seen the claimant more often, provide better supporting evidence or explain their opinion better. The ALJ erred in not conducting such an evaluation.

Second, the ALJ rejects nurse Schuchman's opinions in the Med-9 forms because "there is minimal objective evidence to support these medical statements and they do not appear to be supported by examination findings." (Tr. 19.) However, this is simply not accurate. Nurse Schuchman's opinions are backed up by substantial treatment records which document significant clinical findings related to Plaintiff's mental impairments. (Tr. 400-467, 510-531.) A psychological opinion may rest on observed signs and symptoms. *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005).

Further, the ALJ criticizes nurse Schuchman's opinions as being only of the "check off" variety on forms. This is not accurate. Most of the MED-9 forms include nurse Schuchman's observations and findings regarding Plaintiff's limitations and behaviors. Further, in the treatment records, nurse Schuchman has detailed extensive

symptoms and behaviors that support her opinions in the Med-9 forms. For example, on December 13, 2006, she indicates that Plaintiff has not had AND benefits for the last three months and says, "problems with AND… Talked with Lisa (BART)- needs to find status application. Has been going to AND office- can't figure out system. Lost ID- hard time staying organized… patient continues to be very disorganized… difficulty with any follow through without intensive case management." (Tr. 403). She noted anxious affect, poor memory and paranoia." On July 26, 2006, nurse Schuchman records that Plaintiff was "depressed a few weeks because of meds. Had a panic attack two weeks ago and it scared her, weird things happening in apartment, pile of cheese and crumbled soap on floor. Disorganized- answers same question with different answers." (*Id.* 417.) She notes that Plaintiff had a constricted affect, disorganized thought processes and could not focus, along with positive paranoia, auditory and visual hallucinations. (*Id.*) In fact, nurse Schuchman's notes were much more detailed and precise then most of the other mental health professionals that Plaintiff saw. (*Id.*, *see also* 419, 422-424, 426, 438, 521.)

The ALJ also discounts the Med-9 forms because they were made in connection with Plaintiff's request for state social service benefits, "a program whose definition of 'disability' is significantly different from that of the Social Security Administration." (Tr. 19.) However, the fact that the definitions of disability may be different does not entitle the ALJ to reject the medical findings and statements regarding Plaintiff's limitations in the forms. These findings are relevant to either definition of disability.

The ALJ also states that nurse Schuchman's opinions are inconsistent with the examination at 10F (Tr. 19), which is the report of Dr. Johnson. The ALJ does not say how her opinions contradict those of Dr. Johnson, and as discussed below, the report is not necessarily inconsistent with nurse Schuchman's opinions. Indeed, it actually documented severe mental impairments.

Finally, the ALJ says that the nurse's opinions are contradicted by what Plaintiff does in her activities of daily living, but again the ALJ gives no specifics on this point. Plaintiff's Function Report (Tr.161-168) indicates that she lives alone in an apartment, prepares simple meals but does not have enough food, does the dishes and vacuums but must write herself notes to remind herself what needs doing. She does not like to be around other people and has nightmares, hears voices and sees things in the T.V. While the ALJ asked minimal questions about her daily activities at the hearing. her testimony at the hearing was generally consistent with this. (*Id.* 32-43.) The Tenth Circuit has repeatedly held that the ability to do sporadic chores around the house does not equate to an ability to perform substantial activity in a competitive work setting. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1998). Moreover, rejecting a provider's medical findings on the basis of such activities appears to be an improper lay judgment on the part of the ALJ.

I now turn to the medical providers that the ALJ gave weight to. Before doing so, I first note that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally

entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. When a treating

source's opinion is inconsistent with other medical evidence, the ALJ's task is to

examine the other sources' reports to see if they outweigh the treating source's report,

not the other way around. *Goatcher*, 52 F.3d at 290. The ALJ did not appear to follow

the above rules.

I now turn to the opinion of Dr. Johnson that the ALJ gave "great weight" to.

Dr. Johnson did not review any records or administer any tests other than a mini-mental

status examination. (Tr. 468-469). In giving weight to his opinions, the ALJ states that

Dr. Johnson "did not place any specific restrictions or limitations on the claimants' ability

to perform basic work-related mental activities. . . ." (*Id.* 20.) However, the ALJ failed to

acknowledge the fact that Dr. Johnson obviously thought that Plaintiff had significant

mental health problems because he diagnosed her with schizoaffective disorder and

PTSD and assigned a GAF score of 45 indicating "[s]erious symptoms that interfere with

successful vocation[al], social, and family functioning." (*Id.* 470.)[2] So, in actuality, Dr.

Johnson's opinions appear to generally support the opinions of the treating providers

---

[2] "'The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.'" *Lee v. Barnhart*, 117 Fed. App. 674, 678 (10th Cir. Dec. 8, 2004) (quoting *Langley*, 373 F.3d at 1122 n. 3). "A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job). *Id.* (quoting DSM-IV 34). The ALJ can not simply ignore this evidence, as the ALJ is "tasked with determining the level of [the claimant's] functioning within the six domains." *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *2 (10th Cir. 2007) (finding that the ALJ erred in ignoring the claimant's GAF scores that ranged from 30 to 50). "Standing alone, a low GAF score does not necessarily indicate an impairment seriously interfering with a claimant's ability to work." *Lee*, 2004 WL 2810224, at *3. "The claimant's impairment, for example, might lie solely within the social, rather than the occupational, sphere." *Id.* "A GAF score of fifty or less, however, does suggest an inability to keep a job." *Id.* If the issue is not developed enough on the issue, the ALJ should contact the mental provider. *Thomas*, 2005 WL 2114163, at *3-4.

rather than contradict them.  Further, Dr. Johnson apparently was not asked to fill out a form assessing Plaintiff's abilities in specific areas like Dr. Cookson did.  Thus, I find that the ALJ erred in relying on Dr. Johnson's opinions in support of his decision.

Finally, I address state agency physician Dr. Glasco's opinion.  (Tr. 188-205.) Dr. Glasco found moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (*Id.* 188-89.)  Dr. Glasco concluded in his functional capacity assessment that Plaintiff's "condition would occasionally prevent completion of a normal workday/week or cause reduced pace, however, can maintain attendance/pace within customary tolerances when work does not require more than simple instructions, ordinary routine and simple work decision making."  (*Id.* 190.)

The ALJ gave "substantial weight" to Dr. Glasco's opinions, even though he was a nonexamining physician, and arguably made his mental RFC assessment at least in part based on Dr. Glasco's assessment.[3]  I find that this was also error.  That is because if the ALJ relies heavily on opinions of an agency medical consultant that did

---

[3]   The AlJ erred, however, in that he never actually stated what evidence the mental RFC was based on.   SSR 96-8P directs that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations")."  Tthe ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  *Id.* From this, it is axiomatic that the ALJ must explain what evidence he relies on to support his RFC finding, *Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999), and the failure to do so is reversible error. *See Southard v. Barnhart,* 72 Fed. Appx. 781, 784-785 (10th Cir.2003); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005).

not examine the claimant, those "opinions must themselves find adequate support in the medical evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004). Here, however, the ALJ has pointed to no medical evidence that supports Dr. Glasco's opinions and I find that his opinions are inconsistent with all of the other medical evidence, even the report of Dr. Johnson.

In conclusion, the ALJ has, without good reason or substantial justification, rejected the two opinions from the treating mental health professionals who have known Plaintiff for years. Those providers opined that Plaintiff's substance and alcohol abuse is not her primary diagnosis, and that even without such abuse, her mental impairments would be significant and would impact her ability to work. The opinions of Dr. Benson and Dr. Johnson do not support the ALJ's decision, but actually buttress the opinions of the treating providers. The only evidence that appears contrary to the treating providers' opinions is that of nonexamining state agency provider Dr. Glasco whose opinions are unsupported and not entitled to weight. Accordingly, the ALJ should have given controlling weight to the treating providers, including Dr. Cookson.

The ALJ acknowledged that if treating psychiatrist Dr. Cookson's opinions were given full weight, her opinion would mean that Plaintiff was unable to sustain work activity because of her mental impairments. Accordingly, his RFC and the decision that Plaintiff was able to perform a significant number of jobs is not supported by substantial evidence. Plaintiff should have been found disabled.

### 3. The Appropriate Remedy

Based on the above errors, I find that the case should be reversed outright with an award of benefits. The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.'" *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quotations omitted). Reversal and remand for immediate award of benefits is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id*.

In this case, the ALJ's finding that Plaintiff's drug and alcohol abuse is a material factor contributing to her disability is not supported by substantial evidence. Instead, the record either supported the opposite conclusion or a finding that it was not possible to separate the mental restrictions and limitations imposed by substance abuse from the other mental disorders shown by the record. Under either scenario. a finding of "not material" should have been applied as to Plaintiff's drug and alcohol abuse and Plaintiff should have been found disabled. I also find that the treating providers' opinions should have been given controlling weight, which the ALJ acknowledges would require a finding that Plaintiff is unable to sustain work activity because of her mental impairments. This also means that Plaintiff is disabled under the Social Security Act.

## III. CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for an immediate award of benefits, rather than a rehearing.

Dated September 27, 2010

                                            BY THE COURT:


                                            s/ Wiley Y. Daniel
                                            Wiley Y. Daniel
                                            Chief United States District Judge